DAVID M. ROSENBERG-WOHL (Cal. Bar No. 132924)
HERSHENSON ROSENBERG-WOHL,
A PROFESSIONAL CORPORATION
315 Montgomery St., 8th Fl.
San Francisco, CA 94104
(415) 829-4330
david@hrw-law.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASRA ELIASIEH, M.D., ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>LEGALLY MINE, LLC, AND DOES 1-10,<br><br>Defendants. | Case No.: 3:18-cv-3622<br><br>**COMPLAINT [CLASS ACTION]** |

Plaintiff, Kasra Eliasieh ("Plaintiff"), by and through the undersigned counsel, brings this Complaint against Defendant Legally Mine ("Legally Mine" or "Defendant") and Does 1-10 (together, with "Defendant," as "Defendants") for damages, restitution, declaratory and injunctive relief, and in support thereof states as follows:

**JURISDITION AND VENUE**

1. This Court has federal diversity jurisdiction pursuant to 28 U.S.C. sec. 1332 because the citizenship of the parties is completely diverse and the amount in controversy exceeds $75,000. Plaintiff is a citizen of California. Defendant is an LLC registered under the laws of Utah. Its two members/registered principals are Ammon McNeff and Daniel J. McNeff, both listed as residents and therefore as citizens of Utah.

2. Legally Mine is subject to personal jurisdiction throughout California pursuant to 28 U.S.C. secs. 1391(b)(2) and (3) because it enters into contracts with physicians such as Plaintiff who reside and practice there.

COMPLAINT [CLASS ACTION] - 1

3. Venue is proper in this District under 28 U.S.C. secs. 1391(b) and (c) because Legally Mine seeks to do and does business in this county/District, Legally Mine has transacted business with Plaintiff in this county/District, and Legally Mine is subject to personal jurisdiction in this county/District. *See* Declaration stating these facts, attached to this Complaint as Exhibit 1.

**FACTUAL ALLEGATIONS**

4. Legally Mine describes itself as "the largest, most respected, experienced, and comprehensive lawsuit protection company in America." It's advertised promise: "We provide specialized consulting, packages and tools to help businesses and practices manage risk."

5. Legally Mine operates across the country, including within California. Legally Mine promises "use of entities in multiple states" – "it is not enough to know your own state laws," they say, "it is required to know all the state laws in order to achieve maximum protection." "Where can Legally Mine operate?" "Legally Mine can help customers in all 50 states, and continues to stay up to date on laws in all 50 states. We can help you wherever you live or do business (within the United States)." They present "at over 250 events across the US per year". On information and belief, some of these events are in California. A California physician scare story is featured in Legally Mine's promotional information.

6. Legally Mine preys on physicians and their fear of malpractice lawsuits and judgments. Featured, not just in color but in font size is the following: "The most recent statistics cite that nearly $4 billion ($168 million more than the previous year) was spent in medical malpractice payouts, nearly a 5% increase from the year previous."

7. A key product promoted by Legally Mine is an asset protection program, identified on a form document as "A. Premium Asset Protection Premium +" and "B. Premium Asset Protection Document Access with Entity Creation." Each is a product as well as a service. The former is also known by its acronym "P+." The latter is also known by its acronym DAECP. "Entity Creation" is said to be "unlimited" and it comes with a "Tax Savings Guarantee".

8. As of 2016, Product A cost $150/month or $1,800 up front for 1 year of service. Product B cost $6,000.

9. On information and belief, Legally Mine travels to events/association meetings all over the country, including California, to sell its products in general and its asset protection plan specifically. On information and belief, Legally Mine is certified to provide continuing legal education credits in California.

COMPLAINT [CLASS ACTION] - 2

10. On or about October 13, 2016, Legally Mine made a presentation at a Physician Lunch and Learn event entitled "The Keys to Locking Out Lawsuits and Lowering Taxes" at a conference sponsored by the American Society of Ophthalmic Plastic and Reconstructive Surgery ("ASOPRS"), a gathering of physicians, in Chicago, Illinois. The speaker was Leland McKay. Mr. McKay is a presenter and promoter.

11. At that meeting, Mr. McKay spoke for about 45 minutes. He said that Legally Mine guaranteed all of the 100 physicians present in the room significant tax savings over what each was presently paying. He said that Legally Mine would reimburse up to the full cost of payment any amounts spent not saved in taxes, so there was no risk in paying. He also said that Legally Mine almost never makes refunds because they always save the client an amount in taxes that exceeds the cost of the program.

12. At that meeting, Legally Mine described its asset protection plan and directed those physicians interested in purchasing it to the back of the room where they were provided a one-page document identifying the two products available for purchase, boxes that could be checked for Product A and Product B, text indicating in more detail the product and the price, a total amount "collected at the event" by check or credit card, and a space for date and signature.

13. In small print at the bottom of the page, the form stated "ALL SALES ARE FINAL."

14. In small print below that, the form stated: "I also acknowledge I have read, understand, and agree to the terms described in the 'Check Policy,' 'Consent to Binding Arbitration,' 'Terms and Conditions,'" and 'Notice of Termination' sections on the reverse side of this Agreement."

15. The back of the document consisted if dense small font, single space text that included not just the topics identified in the previous paragraph but "Finance Option."

16. At the bottom of the portion of the back page that contained the "Check Policy," "Consent to Binding Arbitration," "Terms and Conditions," and "Finance Option" was a space for the purchaser to indicate his or her confirming signature.

17. At the ASOPRS meeting, Plaintiff heard a pitch by Legally Mine for its asset protection product. Relying upon the speaker's promise that all funds were refundable if Plaintiff did not save as much on his next yearly tax bill as he would pay to Legally Mine for its product, Plaintiff was interested in purchasing the product as a consumer of financial services that would protect his personal finances from business risks.

COMPLAINT [CLASS ACTION] - 3

Because of this promise, he was not overly worried when the speaker stated that all sales were final – there was explicitly nothing to lose.

18. Plaintiff went to the back of the room and was handed a single page document. That document conforms to the allegations made in the paragraphs above.

19. The top of the form asked for his full name and address, home phone, cell phone, work phone, and email. He provided this information, writing it down on the form as requested.

20. The middle part of the form asked for his personal credit card number, its expiration date, and its three-digit security code (CVV2). This part of the form was particularly large and set apart from other text and encircled the required information with a dotted line. Legally Mine knew or should have known or was grossly negligent regarding the fact that requiring this information on a publicly available and producible sheet violated consumer privacy and specifically the Song-Beverly law in California. Legally Mine had no practices in place to avoid this sort of disclosure; in fact, the form features it. Plaintiff provided the information, writing it down on the form as requested.

21. Legally Mine requested, or required, as a condition for accepting Plaintiff's credit card, that Plaintiff write personal identification information upon the credit card transaction form, that Plaintiff provide personal identification information, which Legally Mine caused to be written on the form, and utilized a credit card form which contained preprinted spaces specifically so designated.

22. Until the bringing of this lawsuit, Plaintiff had no reason to suspect that this disclosure of credit card information was improper or illegal. Plaintiff had intended to authorize use of his credit card for this purpose, and that is what Legally Mine did. Without being a lawyer, Plaintiff would have no way of knowing that the requirement of providing his credit card details in this manner was improper or illegal.

23. Plaintiff authorized Legally Mine to charge his personal credit card the amount of $7,800 ($1,800 for Part A and $6,000 for Part B), dating the form 10/13/16.

24. According to the form, he enrolled in P+ and agreed to be billed $1,800 for 12 months starting 10/13/16. For this money, he was to receive "ongoing available web-software updates, annual document review & blueprint, continued Legal Team support and access to a personal consultant for help with legal entities, continued entity document creation, annual filing of corporate minutes, & exclusive P+ tax benefits."

25. Plaintiff has received no product or service for his $1,800 – not then, and not thereafter.

COMPLAINT [CLASS ACTION] - 4

26. According to the form, he enrolled in "DAECP" and was to receive "access to over 100 specially designed legal documents through mylegalstronghold.com."

27. Plaintiff did not receive the DAECP product at that time, as indicated by the "'DAECP' Product Received" box at the bottom of the form. He was not provided with any password or access to mylegalstronghold.com. He did not initial the box at the bottom of the form indicating "'DAECP' Product Received."

28. Before securing Plaintiff's signature, Legally Mine did not turn the form over to show Plaintiff any language on the back.

29. Before securing Plaintiff's signature, Legally Mine did not explain to Plaintiff the meaning of its Check Policy, its Consent to Binding Arbitration, its Terms and Conditions, and its Notice of Termination. Legally Mine did not explain the meaning of its Finance Option either.

30. The termination language on the back of the form says: "After the initial 12 month term of membership for "P+" has passed, this agreement and payments will automatically be renewed on an annual basis for an additional 12 months. This contract will be subject to the same terms and conditions contained herein, until a formal request for membership termination is received by Legally Mine prior to this original or any renewal membership terms expiring. Formal requests for membership termination must be submitted through an authorized submission portal (through the Legally Mine website). Termination requests must be received at least fifteen (15) days, but not more than forty-five (45) days, prior to the last day of the initial term or any renewal term." That authorized submission portal links to a densely worded, small font document entitled "I AGREE TO BE SUBJECT TO THE TERMS AND CONDITIONS OF THIS SERVICE DISCONTINUATION REQUEST, AS OUTLINED BELOW." Submission of this form is deemed "sufficient" to cancel the renewal, so long as it is submitted in the applicable 45-15 day window before the initial termination date. The physician is told that there is a standard 7-14 day period to "review" a termination request even if the physician is entitled to terminate, that additional information may be requested to consider the request and that the physician is not to pester Legally Mine about this process because it "may be construed as harassment, pressure, and/or undue influence related to the contract termination process" and will itself be a breach of contract. Indeed, if the physician makes any mistake in

COMPLAINT [CLASS ACTION] - 5

this regard, the physician is in breach of contract, has lost any rights to arbitration not just trial, forfeiture of any right to cancel and a 21% penalty surcharge.

31. Because, among other facts, Legally Mine operates in any state by way of its website, mylegalstronghold.com, and provides much of its contractual language by way of weblink, its principal place of business in California is its Utah location from which it directs and maintains this website.

32. Given the extensive supplemental description of Part A and Part B on the front of the form, and given the unambiguous money-back guarantee made orally and in writing to induce signing the form (i.e., the "Tax Savings Guarantee"), Plaintiff was assured by Legally Mine that there was, in fact, no reason to read any of the details on the back of the form. If he saved enough on taxes to cover the asset protection fee, there would likely be no occasion to worry about any fine print. And if not, cancellation and full refund was assured – likewise, no occasion to worry. In this respect, Plaintiff's attitude was not just reasonable – it was anticipated and orchestrated.

33. In the middle of the form, the handwritten "Oct 18 9:00 am" indicates that Legally Mine was to call Plaintiff at that date and time to obtain certain financial information.

34. Legally Mine kept the original of the form and provided Plaintiff with the carbon copy.

35. Plaintiff was provided with two additional documents after signing the contract: the brochure (Attachment B) and the guarantee (Attachment C). On information and belief, every person who signs a contract such as Attachment A with Legally Mine is provided with Attachment B and Attachment C. On information and belief, no person who is present but does not sign the contract is provided Attachment B and Attachment C. Both Attachment B and Attachment C became part of the contract provided by Legally Mine.

36. Attachment B promises that Legally Mine is typically able to complete a physician's asset protection program (clearly including "Legally Mine Asset Protection Premium +") "within a matter of weeks" – specified as 4-6 weeks. This is dependent upon a physician's "prompt assistance" in providing the "necessary information and signatures." Estate planning, by contrast, can occur within 2-4 weeks.

37. None of this was done for Plaintiff.

38. Attachment B explains that those who purchase Legally Mine Asset Protection Premium + are entitled to (1) exclusive services including a Qualifying Registered Agent, the creation and filing of corporate minutes, additional content on the website "mylegalstronghold.com," and hard copies of any legal

COMPLAINT [CLASS ACTION] - 6

documents created; (2) ongoing expert assistance including legal software and document updates, access to mylegalstronghold.com, unlimited entity creation "after price cap has been met" (never explained in the contract), and continued access to legal consultants and experts; and (3) annual services and benefits including comprehensive update and review of documentation, review and update of Tax Savings Plan, and review and update of Asset Protection Blueprint."

39. None of this was done for Plaintiff.

40. Attachment B states that the "total cost of everything we offer each member of our Premium + program would be more than $11,000. On information and belief, Legally Mine does not separately price any of these components of Premium +.

41. Attachment B states that the price charged, when compared to the $11,000 total cost, constitutes "a 90% savings for every single one of our customers."

42. For the price of what a customer purchases from Legally Mine to be a 90% savings, the price would have to be .9 x $11,000 -- a savings of $9,900 and a discounted cost of $1,100. No price offered to Plaintiff came close. Even if he selected just Asset Protection Premium +, the price offered (which he paid) was $1,800. This is an overcharge of $700.00.

43. On the form contract, Attachment A, Legally Mine explains that the reason someone should purchase Product B, Premium Asset Protection Document Access with Entity Creation (at a price of $6,000 – in addition to the $1,800 price of Product A, Premium +, is that in so doing, the purchaser "will receive access to over 100 specially designed legal documents through mylegalstronghold.com." And yet, that access is explicitly included in Premium + according to Attachment B, the brochure: "[a]dditional content" on mylegalstronghold.com, "Document Updates," "access" to mylegalstronghold.com, and "[c]omprehensive update and review of all documentation."

44. On the form contract, Attachment A, Legally Mine explains that if someone should purchase Product B, the purchaser would gain "complimentary service pertaining to the creation of legal entities, and support for legal documents." And yet, that is the service already included with Premium +. That product/service provides "ongoing expert assistance" that includes "Continued Available Legal Software/Document Updates," "Continued MyLegalStronghold.com Access," "Continued Unlimited Entity Creation (after price cap has been met)," and "Continued access to legal consultants and experts."

COMPLAINT [CLASS ACTION] - 7

45. Attachment C states the Legally Mine guarantee: "Legally Mine Tax-Savings Money-Back Guarantee. If within the first year, after completing the initial Legally Mine Program, you have not received or are not projected to receive tax and/or insurance savings equal to or more than your total purchase price for the Legally Mine Program, then you will receive a refund of the calculated difference between your cost for the Legally Mine Program (not including state filing fees and/or registered agent fees) and the amount you actually saved by implementing the program." Attachment C did not define the "initial Legally Mine Program."

46. There were five detailed "terms and conditions:"

(1) Sufficient completion of the Legally Mine Entity Structure and Program." This is not defined.

(2) Application of the Legally Mine Structure and Program, as set out in the Customer's Legally Mine Blueprint. The Blueprint is not defined. Also, application is to be "for the full tax year following the registration and completion of all business entities." This means that the money-back warranty within the first year is not that but dependent upon the subsequent tax year, however that calculation is to be made.

(3) Utilization of the "Legally Mine Educational Tax and Other Savings Strategies." These too are not defined.

(4) Customer's submission of documentation within 90 days of the tax deadline for the following tax year showing tax and other savings less than the cost of the program; and

(5) Customer's receipt from Legally Mine of *another* form "outlining the terms and conditions" already enumerated in the Warranty itself, which customer must sign, date and return to Legally Mine.

47. As promised on the form contract, Legally Mine did not call Plaintiff on October 18 at 9:00 am or otherwise.

48. On October 25, Plaintiff called Legally Mine. Legally Mine was unaware of any obligation to call Plaintiff. Legally Mine set up a time to telephone Plaintiff later that day. Later that day, Legally Mine called and asked for certain financial information from Plaintiff.

49. Following that call, Plaintiff had regrets and thought the program a likely scam. He emailed Legally Mine the next day, October 26, expressing his desire that Legally Mine do nothing on his behalf and his desire to cancel.

COMPLAINT [CLASS ACTION] - 8

50. On October 27, Legally Mine emailed Plaintiff confirming Legally Mine would do no work on Plaintiff's behalf.

51. On November 1, Legally Mine directed Plaintiff to the web link he would need to access in order to obtain a refund.

52. When Plaintiff accessed that site from his home in California, he saw another lengthy, dense and confusing set of warnings and conditions, including: "I AGREE TO BE SUBJECT TO THE TERMS AND CONDITIONS OF THIS SERVICE DISCONTINUATION REQUEST, AS OUTLINED BELOW." He was apprehensive about proceeding so did not.

53. Plaintiff emailed the president of ASOPRS to complaint about Legally Mine on March 28, 2017.

54. On May 17, 2017 Plaintiff filed a complaint about Legally Mine with the FTC.

55. Plaintiff looked into filing a complaint with the Consumer Financial Protection Bureau but was told that this matter did not fall into their jurisdiction.

56. On May 17 Plaintiff again wrote asking for a refund, certified mail. Legally Mine never responded.

57. Plaintiff has engaged the undersigned attorneys concerning this dispute and has agreed to pay them a reasonable fee.

58. More than 30 days prior to the commencement of this action, undersigned counsel wrote, by certified mail, return receipt requested, to Legally Mine at 225 W. 520 N, Orem, Utah 84057, the location where a substantial part of the transaction occurred and the headquarters from which it conducts its business in California, demanding that Legally Mine correct, repair, replace or otherwise rectify the goods or services in violation of unlawful practices detailed by section 1770. The letter is attached hereto as Exhibit 2. No response has been received. In the more than 30 days that have passed, Legally Mine has not communicated any appropriate correction, repair, replacement, or other remedy, or agreed to make such response within a reasonable time. *See* Declaration stating these facts, attached hereto as Exhibit 3.

### CLASS ACTION ALLEGATIONS

59. **Class definition**. All California physicians and dentists who signed up for an asset protection plan with Legally Mine, commencing up to four years prior to the filing of this complaint.

60. Who did not renew following 1 year.

61. Who tried to cancel within the first year.

COMPLAINT [CLASS ACTION] - 9

62. Who signed up within California.
63. Who did not proceed to get help from Legally Mine within the initial year.
64. Who did not do what Legally Mine required of them within the initial year.
65. Did not gain tax savings promised within the initial year.
66. Did not gain tax savings promised.
67. **Class definition:** All California physicians and dentists who signed up for an asset protection plan with Legally Mine, who paid using a credit card, from any time to the present.
68. Subclasses: All who did so commencing up to four years prior to the filing of this complaint.
69. All who did so within California.
70. Numerosity. There are so many potential class members that individual joinder of class members is impractical.
71. Commonality. There are questions of law or fact common to class members.
72. Typicality. Claims of representative are typical of those of absent class members.
73. Adequacy of representation. Class counsel and Plaintiff intend to fairly and adequately protect the interests of absent class members.

**FIRST CLAIM FOR RELIEF**

**(Cal. UCL and Cal. Civ. Code 1668 – illegal conditions)**

74. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**SECOND CLAIM FOR RELIEF**

**(Cal. UCL and Cal. Civ. Code 1668 and 1689.20-24 – "no cancellation" term violates 3-day seminar sale rule)**

75. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**THIRD CLAIM FOR RELIEF**

**(UCL and Civ. Code 1668 and 17602/1770(a)(19) – auto renewal terms not suff. clear)**

76. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**FOURTH CLAIM FOR RELIEF**

COMPLAINT [CLASS ACTION] - 10

(Cal. CLRA and Cal. Civ. Code 1668 – unconsc, illegal conditions)

77. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**FIFTH CLAIM FOR RELIEF**

(Cal. CLRA and Cal. Civ. Code 1668 and 1689.20-24 – unconsc, "no cancellation" term violates 3-day seminar sale rule)

78. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**SIXTH CLAIM FOR RELIEF**

(Cal. CLRA and Cal. Civ. Code 1668 and 17602 – unconsc, auto renewal terms not suff. clear)

79. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**SEVENTH CLAIM FOR RELIEF**

(Cal. CLRA and Cal. Civ. Code 1668 and 17602 and 1770(a)(19) – unconsc, auto renewal terms not suff. clear)

80. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**EIGHTH CLAIM FOR RELIEF**

(Cal. common count – money had and received, requiring refund)

81. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**NINTH CLAIM FOR RELIEF**

(Cal. common count – unjust enrichment/restitution)

82. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**TENTH CLAIM FOR RELIEF**

(Cal. common law breach of contract – tax savings/money back guarantee)

COMPLAINT [CLASS ACTION] - 11

83. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**ELEVENTH CLAIM FOR RELIEF**

**(Cal. common law breach of contract – option to cancel after one year)**

84. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**TWELFTH CLAIM FOR RELIEF**

**(Cal. CLRA 1747.08(a) – credit card disclosure)**

85. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**THIRTEENTH CLAIM FOR RELIEF**

**(Cal. UCL and Cal. Civ. Code 1668 and 1747.08(a) – credit card disclosure)**

86. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**FOURTEENTH CLAIM FOR RELIEF**

**(Cal. CLRA and Cal. Civ. Code 1668 and 1747.08(a) – credit card disclosure)**

87. Plaintiff incorporates by reference and hereby re-alleges the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

**DEMAND FOR RELIEF**

88. WHEREFORE, Plaintiff prays for judgment against Legally Mine and all Defendants that:

   a. Defendants be preliminarily and permanently enjoined from committing the acts alleged herein as well as be declared in violation of each of these laws;

   b. Defendants be ordered to pay Plaintiff's actual, consequential, incidental and special damages.

   c. Defendants be ordered to provide restitution to Plaintiff;

   d. Defendants be ordered to pay Plaintiff's attorneys' fees and costs to the extent available under the statutes sued hereunder;

   e. Plaintiff be entitled to rescind his contract;

   f. Defendants be ordered to pay civil penalties;

g.  Plaintiff be awarded punitive damages; and

h.  Plaintiff be awarded such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff respectfully request a jury trial on all issues triable thereby.

Dated this 18th of June, 2018.

/s/ David M. Rosenberg-Wohl
David M. Rosenberg-Wohl
HERSHENSON ROSENBERG-WOHL
A PROFESSIONAL CORPORATION

COMPLAINT [CLASS ACTION] - 13