OSTERGAR LAW GROUP P.C.
John E. Lattin (State Bar No. 167876)
*jlattin@ostergar.com*
9110 Irvine Center Drive
Irvine, California 92618
Phone: (949) 357-4590
Fax: (949) 305-4591

*Admitted Pro Hac Vice*:
HOWARD, LEWIS & PETERSEN, P.C.
KENNETH PARKINSON (UT Bar No. 6778)
PETER L. LATTIN (UT Bar No. 12152)
120 East 300 North Street
Provo, Utah 84606
Telephone:   (801) 373-6345
Facsimile:   (801) 377-4991

Attorneys for Defendant,
LEGALLY MINE, LLC

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASRA ELIASHIEH, M.D., on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>    vs.<br><br>LEGALLY MINE, LLC,<br><br>                    Defendant. | Case No.: 3:18-cv-03622-JSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION 1) TO LIFT STAY OF PROCEEDINGS AND REINSTATE PLAINTIFF'S CASE; 2) FOR ATTORNEYS' FEES AND ANCILLARY RELIEF; AND 3) TO PERMIT PLAINTIFF TO FILE AMENDED COMPLAINT [CLASS ACTION]**<br><br>Date:    February 27, 2020<br>Time:    9:00 A.M.<br>Ctrm:    E<br>Judge:  Hon. Jacqueline S. Corley |

1

## <u>TABLE OF CONTENTS</u>

2

3 I.      STATEMENT OF THE ISSUES TO BE DECIDED ..........................................5

4 II.     STATEMENT OF THE RELEVANT FACTS ................................................5

5         A.      Defendant Is a "Lawsuit Protection Company" and Provides Products and
                  Services to Medical Professionals, Such as Plaintiff. ...............................5

6         B.      Dr. Eliasieh Purchased the Legally Mine Premium Asset Protection
7                 Document Access with Entity Creation Program. ...................................5

8         C.      The Order Form Contains an Arbitration Provision. .................................6

9         D.      The Arbitration Agreement Is Subject to AAA Commercial Rules. .....................6

10        E.      The Court This Matter to Arbitration According to the Terms of the
                  Arbitration Agreement Contained in the Order Form...........................7
11
12        F.      Even though the Commercial Rules Apply to this Dispute, Dr. Eliasieh
                  Incorrectly Filed Arbitration under the AAA Consumer Rules........................8

13        G.      Legally Mine Attempted Diligently to Resolve the Disagreement over the
                  Application of the Commercial or Consumer Rules.................................8

14        H.      Even Though Legally Mine Was Actively Attempting to Resolve the
15                Disagreement over the Proper Application of the Commercial Rules, AAA
                  Declined to Administer the Case. ...............................................9

16        I.      Legally Mine Has Attempted to Comply with the Court's Order to
17                "Resolve the Issues with the Arbitration Proceeding".............................9

18 III.   ARGUMENT ...........................................................................11

19        A.      Legally Mine Has Attempted Diligently to Arbitrate this Matter under the
                  AAA Commercial Rules. ........................................................11
20
21                1.      The AAA Commercial Rules Apply to this Matter. ...............................11

22                2.      Dr. Eliasieh Initiated Arbitration under the Wrong Rules. .......................12

23                3.      Legally Mine Has Diligently Sought Application of the
                          Commercial Rules.........................................................12

24        B.      Defendant Has Not Waived Arbitration. ........................................13

25        C.      There Has Been No Showing of Bad Faith to Warrant Sanctions.......................15

26                1.      Legally Mine Has Acted in Good Faith Efforts to Enforce
                          Arbitration under the AAA Commercial Rules. ................................15
27
28                2.      Plaintiff's Counsel's Request for Ancillary Relief Is Improper. ..................15

1

D.      Dr. Eliasieh's Proposed Amended Complaint Is Frivolous. ..................................16

IV.    CONCLUSION............................................................................................................16

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN OPPOSITION TO MOTION TO REINSTATE CASE

1

# **TABLE OF AUTHORITIES**

2

3    **Cases**

4    *Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995)..........................................16

5    *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005)............................12

6    *Brunner v. Lyft, Inc.*, 2019 WL6001945, at *2

7        (N.D.Cal Nov. 14, 2019) ..............................................................13, 17

8    *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9 th Cir. 2008)............14

9    *Crook v. Wyndham Vacation Ownership, Inc.Crook v.*

10        *Wyndham Vacation Ownership, Inc.,* 2015 WL 4452111

11        (N.D. Cal. July 20, 2015) ...................................................................11

12    *Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016) ......................................14

13    *McLellan v. Fitbit, Inc.,* 2018 WL 3549042, at *2–3

14        (N.D. Cal. July 24, 2018) ......................................................12, 15, 17

15    **Other Authorities**

16    AAA Commercial Rules.......................................................................*passim*

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN OPPOSITION TO MOTION TO REINSTATE CASE

I.      **STATEMENT OF THE ISSUES TO BE DECIDED**

Plaintiff Kasra Eliasieh, M.D. ("Dr. Eliasieh") initiated arbitration under the wrong rules, and Defendant Legally Mine, LLC ("Legally Mine") objected.  Now, Dr. Eliasieh claims Legally Mine waived arbitration and requests the Court (1) to lift the stay, (2) award sanctions against Defendant, and (3) permit him to amend his complaint. However, the evidence does not support the good doctor's motion.

II.     **STATEMENT OF THE RELEVANT FACTS**

A.      **Defendant Is a "Lawsuit Protection Company" and Provides Products and Services to Medical Professionals, Such as Plaintiff.**

Legally Mine is a "lawsuit protection company." Among other services, Legally Mine advises professionals in the formation of limited liability companies and other risk management and asset protection strategies. Legally Mine specifically markets to medical professionals and business owners. Legally Mine's asset protection products are designed to shield a physician's assets from medical malpractice liability. Declaration of Dan McNeff In Opposition to Plaintiff's Motion to Lift Stay ("McNeff Decl.), ¶1-2.

Dr. Eliashieh is a medical professional and operates an ophthalmology clinic that includes two surgeons and seven locations and is affiliated with eleven medical schools, universities, boards, and associations.  Declaration of Kenneth Parkinson in Support of Response to Administrative Motion to Relate Cases [Dkt. 6-1 in Case No. 4:19-cv-05977-KAW], ¶6.

B.      **Dr. Eliasieh Purchased the Legally Mine Premium Asset Protection Document Access with Entity Creation Program.**

On October 31, 2016, Dr. Eliashieh purchased the Legally Mine Premium Asset Protection Access with Entity Creation Program at a conference of the American Society of Ophthalmic Plastic and Reconstructive Surgery ("ASOPRS") in Chicago, Illinois. McNeff Decl., ¶4. ASOPRS is a society of physicians that "has over 650 US and 100 international members in over 30 countries around the world

dedicated to facial rejuvenation and disorders of the eyelids, eye socket and tear drainage system." *Id.*, ¶¶5, 6. In connection with the business transaction, Dr. Eliasieh signed an Order form. *Id.*

The Legally Mine Premium Asset Protection Access with Entity Creation Program is a business-related service. The service which includes "Legal Team support and access to a personal consultant for help with legal entities, continued entity document creation, annual filing of corporate minutes & exclusive P+ tax benefits" and "service pertaining to the creation of legal entities, and support for legal documents, within the scope of Legally Mine." *Id.*, ¶7.

### C.    The Order Form Contains an Arbitration Provision.

The Order form Dr. Kasra Eliashieh signed includes the following arbitration provision:

> By execution of their Agreement (the "Agreement"), purchaser/customer ("Customer") and Legally Mine, ("Company") hereby agree that any and all disputes that arise between them concerning this Agreement or any of the terms of this Agreement, or that concern any aspect of the relationship between Customer and Company, shall be decided exclusively in binding arbitration conducted in the state of Utah by the American Arbitration Association ("AAA"). Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Customer and Company further agree that each party will bear his/her/its own costs and attorneys' fees incurred in connection with the AAA arbitration proceeding, and agree that the AAA arbitrator shall have no power or discretion to make any award of costs or attorneys' fees. By agreeing to arbitration, you waive any right or authority for any claims to be arbitrated as a class action.

*Id.*, ¶8.

### D.    The Arbitration Agreement Is Subject to AAA Commercial Rules.

The subject transaction is a business to business transaction—a transaction between Dr. Eliasieh's medical practice and Legally Mine—for the purpose of

protecting the assets of Dr. Eliasieh's medical practice. *Id.*, ¶9. The AAA Commercial Arbitration Rules specifically apply with disputes over business transactions. AAA Commercial Rules, Introduction, R-1 (a). *See* Ex. 1 to the Request for Judicial Notice ("RJN"), filed herewith.

The AAA Consumer Rules do not apply to this dispute.  The AAA Consumer Rules apply to products or services "for personal or household use." AAA Consumer Rules, Introduction, R-1 (a).  For example, the Consumer Rules apply to credit card agreements, telecommunications agreements, automobile and manufactured home purchase contracts, finance agreements, home inspection contracts, pest control services, moving and storage contracts, warranties, legal funding,[1] health and fitness club membership agreements, travel services, insurance policies, and private school enrollment agreements. *See* Ex. 2 to RJN. Legally Mine does not sell products or services for personal or household uses. Rather, it sells asset protection services and products to business owners who provide professional services to others as their primary commercial endeavor. McNeff Decl., ¶¶10, 11.

### E. The Court This Matter to Arbitration According to the Terms of the Arbitration Agreement Contained in the Order Form.

On April 30, 2019, this Court ordered "[a]ll claims asserted in this case must *be arbitrated due to the valid Arbitration Agreement contained in the Order Form, which controls* 'any and all disputes that arise between [the parties] concerning this Agreement or any of the terms of this Agreement, or that concern any aspect of the relationship between Customer and Company.'" Dkt. 66, p.15 at 2-7 (emphasis added).

/ / /

/ / /

/ / /

---

[1] Legally Mine does not provide legal funding, which is a process by which litigants can finance their litigation.

**F.     Even though the Commercial Rules Apply to this Dispute, Dr. Eliasieh Incorrectly Filed Arbitration under the AAA Consumer Rules.**

Dr. Eliasieh initiated an arbitration under the AAA Consumer Rules. On or around on July 11, 2019, Dr. Eliasieh's counsel held informal telephone conferences with Defendant's counsel regarding the arbitration. Declaration of Ken Parkinson [Dkt. 70], ¶4. The parties discussed what arbitration rules should apply. Dkt. 70, ¶4. Legally Mine asserted the AAA Commercial Rules applied to the disputed business transaction. Dr. Eliasieh's counsel contended the AAA Consumer Rules applied. Dkt. 70, ¶5. The parties did not resolve their concerns. Dkt. 70, ¶6. On July 11, 2019, despite Legally Mine's good faith objection, Dr. Eliasieh filed a demand for arbitration with the American Arbitration Association ("AAA") under the AAA Consumer Rules (AAA Case No. 01-19-0002-1557). Dkt. 70, ¶6. As a result, contrary to the express language of the Arbitration Agreement and the Court's April 30, 2019 Order, the AAA redirected the arbitration to California, rather than Utah. Dkt. 70, ¶8.

**G.     Legally Mine Attempted Diligently to Resolve the Disagreement over the Application of the Commercial or Consumer Rules.**

By a letter dated August 6, 2019, over two months after the Court's order, AAA confirmed Dr. Eliasieh initiated the arbitration under its Consumer Rules. Dkt. 70, ¶11. AAA stated the arbitration venue provision (i.e., Utah) violated the Consumer Rules, refused to apply the Order Form's attorney's fees clause, and demanded Legally Mine register the arbitration clause on the AAA consumer registry. Dkt. 70, ¶¶7-16.

On August 15, 2019, Mr. Parkinson called AAA and outlined Legally Mine's objections to the Consumer Rules. Dkt. 70, ¶12. Mr. Parkinson explained the dispute involved a contract between two businesses, and the contract was not a

/ / /

1  "consumer agreement." *Id.* The AAA representative promised to "get back to

2  [him]." *Id.*

3      The AAA representative did not get back to Mr. Parkinson. Dkt. 70, ¶13.

4  Instead, AAA sent a letter dated August 22, 2019 to John Lattin (not Mr.

5  Parkinson) regarding the filing fees and failed to address Legally Mine's objections

6  to the application of the Consumer Rules. Dkt. 70, ¶13. On August 27, 2019, John

7  Lattin advised AAA that Kenneth Parkinson and Peter Lattin were Legally Mine's

8  counsel for the arbitration. Declaration of John E. Lattin ("J. Lattin Decl."), ¶2.

9      **H.   Even Though Legally Mine Was Actively Attempting to Resolve**

10        **the Disagreement over the Proper Application of the Commercial**

11        **Rules, AAA Declined to Administer the Case.**

12      Legally Mine timely objected to the application of the Consumer Rules, and

13  AAA led Mr. Parkinson to believe Legally Mine would have an opportunity to be

14  heard on its objections to the Consumer Rules.  However, on September 10, 2019,

15  AAA declined to administer the case. Dkt. 70, ¶14. AAA did not give Legally Mine

16  an opportunity to be heard on its objections to the application of the Consumer

17  Rules. J. Lattin Decl., ¶3-4. Accordingly, the unilateral application of the Consumer

18  Rules and mandatory registration of the Legally Mine arbitration clause under the

19  Consumer Rules violates the Legally Mine contract and deprives Legally Mine of

20  due process.

21      **I.    Legally Mine Has Attempted to Comply with the Court's Order to**

22        **"Resolve the Issues with the Arbitration Proceeding".**

23      On November 22, 2019, after AAA unilaterally dismissed the arbitration

24  without providing proper notice, the Court ordered: "[Legally Mine] has until

25  December 12, 2019 to resolve the issues with the arbitration proceeding." Dkt. No.

26  16 [Case No. 19-CV-05977]. On November 22, 2019, counsel for Defendant called

27  AAA and immediately requested that they re-open the arbitration and that they

28

accept payment of Defendant's fees in AAA Case No. 01-19-0002-1557. Parkinson Decl. [Dkt. 70], ¶17-18.

On November 22, 2019, counsel for Defendant emailed opposing counsel and requested that he cooperate in re-opening the arbitration. Dkt. 70, ¶19. On November 23, 2019, and November 26, 2019, counsel exchanged emails in which counsel for Defendant proposed reopening the arbitration. Dkt. 70, ¶20. Counsel for Dr. Eliasieh declined unless Legally Mine would propose arbitration terms acceptable to Dr. Eliasieh. Dkt. 70, ¶21. On December 4, 2019, subject to Rule 408, counsel discussed various issues in this case, including the unresolved matters surrounding the arbitration. Dkt. 70, ¶23.

On December 10, 2019, Peter Lattin (counsel for Legally Mine) called AAA and expressed objections regarding AAA's unilateral dismissal of the arbitration when unresolved issues were pending regarding the proper rules. Declaration of Peter Lattin in Opposition to Motion to Lift Stay ("P. Lattin Decl."), ¶2-3. Peter Lattin also requested that AAA reopen the arbitration. *Id.*, ¶4. Peter Lattin raised the following:

- The application of the Consumer Rules to this matter.
- On August 15, 2019, a representative from AAA had told Mr. Parkinson she would "get back" to him about objections to the Consumer Rules.
- AAA's failure to address and resolved Legally Mine's objections to the Consumer Rules.
- AAA's decision to invalidate the venue and attorney's fees provisions of the Order Form due to the misapplication of the Consumer Rules.
- AAA's demand to register on the consumer registry.
- The dispute between the parties was clearly a commercial dispute.

*Id.*, ¶¶4-7.

The AAA representative insisted the Consumer Rules were appropriate because the Arbitration Agreement used the term "consumer." *Id.*, ¶5. In fact, the

MEMORANDUM IN OPPOSITION TO MOTION TO REINSTATE CASE

Arbitration Agreement uses the term "customer." At AAA's suggestion, on December 9, 2019, Mr. Parkinson sent AAA a letter regarding the objections to the Consumer Rules and the requests to reopen the arbitration. *Id*., ¶7.

## III.   ARGUMENT

### A. Legally Mine Has Attempted Diligently to Arbitrate this Matter under the AAA Commercial Rules.

#### 1.   The AAA Commercial Rules Apply to this Matter.

Legally Mine diligently has attempted to arbitrate this dispute *under the proper rules*—the AAA Commercial Rules—and has objected to the Consumer Rules. In the case of *Crook v. Wyndham Vacation Ownership, Inc.*, senior citizens had purchased vacation timeshares from Wyndham and entered into a dispute resolution clause providing for the application of the AAA Commercial Rules. 2015 WL 4452111, at *5 (N.D. Cal. July 20, 2015). If senior citizens purchasing time shares is a "commercial transaction", then a medical professional purchasing asset protection services and products is a commercial transaction.

The AAA Commercial Rules, Rule R-1(a) states "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration…of a domestic commercial dispute without specifying particular rules." In *Crook*, the court applied the Commercial Rules and observed "an agreement to arbitrate a domestic commercial dispute pursuant to the 'AAA rules' without specifying which AAA rules is an agreement to the Commercial Rules." *Id.* Applying Rule R-1(a) and *Crook*, the Commercial Rules apply because the disputed transaction is a business transaction. Dr. Eliasieh purchased the Legally Mine "Premium Asset Protection Document Access with Entity Creation" to protect profits and assets generated by his medical practice. This was a commercial transaction, not a transaction for personal or household products or services.

/ / /

1

2.   <u>Dr. Eliasieh Initiated Arbitration under the Wrong Rules.</u>

2

Nevertheless, Dr. Eliasieh initiated arbitration under the Consumer Rules.

3

Legally Mine objected to the Consumer Rules and attempted to enforce arbitration

4

under the Commercial Rules.  Legally Mine does not dispute Dr. Eliasieh's right to

5

arbitrate this dispute. However, Dr. Eliasieh does not have the right to invoke the

6

wrong rules. This Court found the Legally Mine arbitration agreement was valid

7

and enforceable. Based on the Court's Order, Dr. Eliasieh should have filed under

8

the Commercial Rules.

9

3.   <u>Legally Mine Has Diligently Sought Application of the</u>

10

<u>Commercial Rules.</u>

11

Legally Mine has not refused to arbitrate. Dr. Eliasieh cites *McLellan v.*

12

*Fitbit, Inc.* in support of his argument Legally Mine refused to participate in

13

arbitration. *McLellan v. Fitbit, Inc.,* 2018 WL 3549042, at *2–3 (N.D. Cal. July 24,

14

2018). There*,* Fitbit refused to participate in arbitration, and told the plaintiff "it had

15

no intention of arbitrating her claims." *Id.*

16

In *Brown v. Dillard's, Inc.*, Dillard's refused to participate in arbitration, and

17

the plaintiff spent months trying to get Dillard's to discuss its refusal. 430 F.3d

18

1004, 1008-1009 (9th Cir. 2005).   When the plaintiff reached a Dillard's

19

representative, she was told that "her complaint had no merit and that Dillard's

20

refused to arbitrate." *Id.* at 1009.  On these facts, the court held Dillard's was in

21

breach of its arbitration agreement and lost the right to compel arbitration.[2]

22

Here, Legally Mine has attempted to arbitrate under the correct rules.  On

23

August 6, 2019, AAA confirmed Dr. Eliasieh filed a demand under the Consumer

24

Rules. Dkt. 70, pg. 2, line 21-23. Dr. Eliasieh breached the arbitration contract by

25

filing under the wrong rules. On August 15, 2019, Kenneth Parkinson contacted

26

27

28

---

[2] Dr. Eliasieh cites *Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197 (9th Cir. 2003) which is inapposite. There, the defendant defaulted on non-payment of the arbitrator's fees, failed to make alternate payment arrangements, and the arbitrator entered a default.  Here, the evidence shows Legally Mine objected to the Consumer Rules and was actively attempting to resolve the issue.

AAA and objected to the application of the Consumer Rules. *Id.* at line 24-28. AAA did not respond to the objections but sent a letter dated August 22, 2019 to John Lattin regarding the filing fees associated with a consumer arbitration. Dkt. 70, pg. 3, 1-6; pg. 47. On August 27, 2019, John Lattin advised AAA that Kenneth Parkinson and Peter Lattin were counsel for Legally Mine in the arbitration.  By a letter dated September 10, 2019, AAA declined to administer to the arbitration under the Consumer Rules.  Dkt. 70, pg. 50.

On November 22, 2019, counsel for Defendant (1) requested AAA reopen the arbitration and accept payment of Defendant's fees in AAA Case No. 01-19-0002-1557, and (2) emailed Dr. Eliasieh's counsel and requested that he cooperate in reopening the arbitration. Dkt. 70, pg. 3, line 17-28. Counsel exchanged emails again on November 23, 2019, and November 26, 2019. *Id.* On December 4, 2019, counsel held a telephone conference to discuss the potential resolution of various issues in this case, including the unresolved matters surrounding the arbitration. On December 9, 2019, Peter Lattin (arbitration counsel for Legally Mine) called AAA. Peter Lattin requested that AAA reopen the arbitration. Dkt. 70, pg. 52. On December 9, 2019, Mr. Parkinson sent AAA a letter memorializing Legally Mine's attempts to arbitrate under the Commercial Rules. Despite Legally Mine's diligent efforts, AAA declined to reopen the arbitration. Dkt. 70, pg. 5, line 1-8.

There is no evidence before the Court that Legally Mine has refused to arbitrate. On the contrary, the record demonstrates Legally Mine did not pay fees while attempting to resolve the application of the proper rules. *See Brunner v. Lyft, Inc.*, 2019 WL6001945, at *2 (N.D.Cal Nov. 14, 2019) (holding no default where non-payment of fees "was the result of genuine administrative confusion").

## B.    Defendant Has Not Waived Arbitration.

Dr. Eliasieh argues Legally Mine has waived arbitration because it objected to the wrong rules.  In determining whether a party has waived the right to demand arbitration, courts consider:

- Whether the party's actions are inconsistent with the right to arbitrate;
- Whether the party *substantially invoked litigation machinery* (e.g., motions going to merits of claim) before notifying the opposing party of an intent to arbitrate;
- Whether the party either requested arbitration close to the trial date or delayed for a long period before seeking a stay;
- Whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings;
- Whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration) had taken place; and
- Whether the delay affected, misled or prejudiced the opposing party.

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1124 (9 th Cir. 2008).

Waiver is the intentional relinquishment or abandonment of a known right. In this context, Dr. Eliasieh must establish: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). There is a "a heavy burden of proof" on any party asserting waiver. *Id.* Legally Mine does not contest its knowledge of an existing right to arbitrate these claims, but Dr. Eliasieh cannot demonstrate either an act inconsistent with that right or prejudice.

Here, there is no evidence Legally Mine has acted inconsistent with the right to arbitrate. Legally Mine has not invoked any litigation machinery, delayed in order to gain some strategic advantage, or filed a counterclaim. No important intervening steps have taken place. The delay has not affected, misled or prejudiced Dr. Eliasieh. Rather, the evidence shows Dr. Eliasieh initiated the arbitration under the wrong rules, and Legally Mine has been diligently attempting to cooperate with AAA and Dr. Eliasieh's counsel to apply the correct rules.

/ / /

C.   **There Has Been No Showing of Bad Faith to Warrant Sanctions.**

1. Legally Mine Has Acted in Good Faith Efforts to Enforce Arbitration under the AAA Commercial Rules.

Legally Mine has acted in good faith to apply the Commercial Rules to this dispute.  Dr. Eliasieh seeks attorney's fees and sanctions because Legally Mine has objected to the Consumer Rules. Legally Mine has not refused to arbitrate. Legally Mine simply has requested an opportunity to be heard on its objections to the Consumer Rules. In this case, Legally Mine, LLC attempted to participate in arbitration, forwarded its concerns about the arbitration to AAA, and was denied an opportunity to arbitrate under the proper rules. Meanwhile, Plaintiff insisted on application of rules which would have damaged Legally Mine's relationship with every business customer—none of which have any relationship to this case.

Bad faith that justifies sanctions requires "willful improper conduct," such as delaying and impeding arbitration on frivolous grounds and misleading the court. *See Fitbit*, 2017 WL 4551484, at *3 (awarding sanctions where defendant engaged in bad faith delay of arbitration and was evasive and misleading after the matter was brought to the court's attention).

Here, Legally Mine continues to seek in good faith the application of the Commercial Rules to the arbitration of this dispute.  This cannot support an award of sanctions.

2. Plaintiff's Counsel's Request for Ancillary Relief Is Improper.

In addition, Plaintiff's counsel seeks an order "requiring Defendants and its attorneys to provide a copy of the forthcoming order rejecting arbitration on all those customers of Defendant who have complained about Defendant's practices since September 10, 2019 and continuing for one year from the date of the forthcoming order." Dkt. 71, p.10. There is no basis or authority for this vague provisional relief. The Court cannot order Legally Mine send its customers an order that does not exist.

1

### D.    __Dr. Eliasieh's Proposed Amended Complaint Is Frivolous__.

2    This Court should not permit Plaintiff to amend his complaint. Dr. Eliasieh

3    purports to add paragraphs 55, 56 and 57.i.-57.l.  In essence, Dr. Eliasieh alleges

4    AAA would decline to arbitrate any matter due to "Legally Mine's refusal to

5    comply with AAA's requirements" and requested Legally Mine to "remove AAA

6    name from its consumer arbitration clause so there is no confusion to the public

7    regarding our decision."   Dkt. 71, p.34. Of course, Legally Mine contends the

8    arbitration is not a "consumer arbitration clause" and seeks to apply the

9    Commercial Rules to this dispute.

10    The proposed amended complaint alleges Legally Mine "peddles fear" [Dkt.

11    71 pg. 20, line 4] describes Legally Mine promotional material as a "scare story"

12    and presentations as "high on dramatic presentation." Dkt. 71 pg. 21 line 11.

13    Plaintiff states that "no transaction with Legally Mine… can be undone… because

14    the proverbial cat is out of the bag." Dkt. 71 pg. 25, line 19. Plaintiff describes one

15    of Legally Mine's documents as "onerous" and claims that it contains "various

16    onerous threats." Dkt. 71 pg. 25 line 27. Because the amended complaint contains

17    impertinent and scandalous material that is not helpful to a resolution of this

18    dispute, the Court should deny Plaintiff's motion to amend.

19    Futility of amendment can, by itself, justify the denial of a motion for leave

20    to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Amended pleadings

21    that are "duplicative" are particularly suspect. *Id.* at 846. Here, the proposed

22    amendments make no material changes. In fact, the causes of action set forth in the

23    proposed amended complaint are the same as in the original claim.

24    Accordingly, the motion to amend should be denied.

25    ## IV.    __CONCLUSION__

26    This Court should order the parties back to arbitration under the AAA

27    Commercial Rules pursuant to the parties' agreement. Procedural or administrative

28    missteps and misunderstandings often indicate that a case should proceed back to

arbitration instead of returning to court. *See e.g. Brunner v. Lyft, Inc.*, No. 19-CV-04808-VC, 2019 WL 6001945, at \*2 (N.D. Cal. Nov. 14, 2019)(ongoing arbitration appropriate when there is "genuine administrative confusion"); *See also Fitbit*, 2017 WL 4551484, at \*3 (case returned to arbitration after failure to timely pay fees).

Accordingly, Legally Mine requests the Court to deny Plaintiff's motion and order the parties to participate in arbitration under the proper rules. This Court should likewise deny the motion for sanctions the motion to amend the complaint.


Dated:  January 28, 2020                    OSTERGAR LAW GROUP P.C.


By:   */s/ John E. Lattin IV*
                    John E. Lattin IV
                    Attorneys for Defendant

MEMORANDUM IN OPPOSITION TO MOTION TO REINSTATE CASE

## **PROOF OF SERVICE**

I am at least 18 years of age, and not a party to the within action. I am a resident of or employed in the County of Orange, State of California. My address is 9110 Irvine Center Drive, Irvine, California 92618. My electronic address is: cslovenec@ostergar.com

On January 28, 2020, I served the foregoing document(s) described as:

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION 1) TO LIFT STAY OF PROCEEDINGS AND REINSTATE PLAINTIFF'S CASE; 2) FOR ATTORNEYS' FEES AND ANCILLARY RELIEF; AND 3) TO PERMIT PLAINTIFF TO FILE AMENDED COMPLAINT [CLASS ACTION]**

on the interested parties identified in this action by the means of service designated below:

| | |
|---|---|
| David Michael Rosenberg-Wohl<br>Hershenson Rosenberg-Wohl, APC<br>315 Montgomery St., 8th Fl.<br>San Francisco, CA 94104<br>415-829-4330<br><br>Email: david@hrw-law.com | *Attorneys for Plaintiff* |

___ (By Mail Service) By depositing the sealed envelope(s) with the United States Postal Service at Yorba Linda, CA, with postage thereof fully paid. (C.C.P.§1013 and/or §1101 et seq.)

_X_ (By Electronic Transmission) I caused the described document(s) described herein electronically transmitted and served via the Pacer system. The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(E) and L.R. 5-1(h).

I certify that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 28, 2020, at Irvine, California.


*/s/ Christina Slovenec*
CHRISTINA SLOVENEC