1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    KASRA ELIASIEH,                          Case No.  18-cv-03622-JSC

8                    Plaintiff,                        19-cv-05977-JSC

9         v.                                  ORDER REGARDING PLAINTIFF'S
                                              MOTION: (1) TO LIFT STAY OF
10   LEGALLY MINE, LLC,                        PROCEEDINGS AND REINSTATE
                                              CASE; (2) FOR ATTORNEYS' FEES
11                  Defendant.                 AND ANCILLARY RELIEF; (3) TO
                                              FILE AN AMENDED COMPLAINT
12
                                              Re: Dkt. No. 71
13

14        Kasra Eliasieh brings this state law putative class action against Legally Mine, LLC arising

15   from Plaintiff's purchase of an asset protection plan.  (Dkt. No. 1.)[1]  In April 2019, the Court

16   granted Defendant's motion to compel arbitration and dismissed the action without prejudice.

17   (Dkt. No. 66.)  In September 2019, Plaintiff filed a new action alleging that Defendant had failed

18   to comply with the arbitration order.  *See Eliasieh v. Legally Mine, LLC*, No. 19-5977 JSC.  The

19   Court related that action to this action and directed Plaintiff to file a motion for appropriate relief.

20   (Dkt. No. 69.)  Plaintiff thereafter filed the now pending motion (1) to lift stay of proceedings and

21   reinstate the case, (2) for attorneys' fees and ancillary relief, and (3) to file an amended complaint.

22   (Dkt. No. 71.)  After careful consideration of the parties' briefing, the Court concludes that oral

23   argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS Plaintiff's motion to

24   reinstate the case and for leave to amend the complaint.[2]  It is undisputed that Defendant

25

26   _____
     [1] Record citations are to material in the Electronic Case File ("ECF"), 18-cv3622 JSC unless
27   otherwise noted; pinpoint citations are to the ECF-generated page numbers at the top of the
     documents.
28   [2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
     636(c).  (Dkt. Nos. 5, 14, 34.)

United States District Court
Northern District of California

materially breached the arbitration agreement by, at a minimum, failing to pay the arbitration fees and therefore Plaintiff's claims will proceed in federal court.  For the reasons explained below, the Court DENIES Plaintiff's request for sanctions and for ancillary relief.

## BACKGROUND

Plaintiff filed the underlying complaint against Defendant on June 18, 2018.  (Dkt. No. 1.)  Plaintiff brought 14 claims under the California Unfair Competition Law (UCL), the California Consumer Legal Remedies Act (CLRA), and California common law.  (*Id.*)  Defendant failed to timely file a responsive pleading, and after the clerk entered default, Plaintiff moved for default judgment on October 12, 2018.  (Dkt. No. 18.)  Defendant moved to set aside default that same day, and the Court subsequently granted Defendant's motion and set aside the default.  (Dkt. No. 50.)

Defendant then filed a motion to compel arbitration and dismiss, or in the alternative, stay the action, which the Court granted and dismissed the action "without prejudice to reinstatement should further proceedings be necessary."  (Dkt. No. 66.)  The catalyst for this motion is what transpired since the Court granted Defendant's motion to compel arbitration.

Plaintiff filed his demand for arbitration with the American Arbitration Association (AAA)—the entity designated by the parties' arbitration agreement—on July 11, 2019 and served a copy of the demand on Defendant the same day.  (No. 18-cv-3622 Dkt. No. 52-3 at 3 (arbitration agreement); No. 19-cv-5977, Dkt. No. 12 at 127-132 (Exs. I, J, K) (demand and service).)  On August 6, 2019, AAA sent a letter to all parties stating that it had "determined that [the] arbitration arises out of a consumer agreement and, as such, the Consumer Arbitration Rules ('Consumer Rules') apply."  (No. 19-cv-5977, Dkt. No. 12 at 133-135, Ex. L.)  AAA asked Defendant to register its consumer arbitration agreement on AAA's "Consumer Clause Registry" and submit it for review to determine "material compliance with the due process standards of the Consumer Due Process Protocol [] and the Consumer Rules."  (*Id.*)  In addition, before moving forward with the administration, AAA asked Defendant to waive the venue provision requiring arbitration to be exclusively conducted in Utah, waive another provision related to stripping the arbitrator of any power or discretion to award costs or attorneys' fees, and "agree to have th[e] matter and any

1    future consumer arbitrations filed under th[e] agreement administered under the Consumer Rules

2    and in compliance with its [Due Process] Protocol." AAA stated that the two provisions needed to

3    be waived because they violated AAA's Consumer Due Process Protocol principles. (*Id.*) Lastly,

4    the letter directed Defendant to pay its portion of the filing fee, arbitration agreement registration

5    fee, and arbitrator's compensation. (*Id.*)

6            On August 22, 2019, AAA sent a second letter noting that it had "not received the

7    administrative fees and arbitrator compensation." (No. 19-cv-5977, Dkt. No. 12 at 136-137, Ex.

8    M.) Further, AAA wrote that Defendant had failed to comply with AAA's request to waive the

9    two provisions, and to "have this and all consumer arbitrations heard in compliance with the AAA

10   Due Process Consumer Protocol." (*Id.*) The letter warned that AAA may close the case and

11   refuse to administer any arbitration involving Defendant, and requested that Defendant "remove

12   the AAA name from its arbitration clause." (*Id.*)

13           With its third letter on September 10, 2019, AAA terminated the arbitration. (No. 19-cv-

14   5977, Dkt. No. 12 at 141, Ex. P.)[3] The letter informed all parties that because AAA had "not

15   received the required fees from Legally Mine, LLC . . . [it] must decline to administer [the] case"

16   and had closed its file. (*Id.*) AAA also stated that because Defendant's non-payment "constitutes

17   a failure to adhere to [its] policies regarding consumer claims, [it] may decline to administer future

18   consumer arbitrations involving Legally Mine." (*Id.*) Similar to its August 22, 2019 letter, AAA

19   also requested that Defendant "remove the AAA name from its consumer arbitration clause so that

20   there is no confusion to the public regarding [its] decision." (*Id.*)

21           Two weeks later, Plaintiff filed a new action alleging that the matter once again needed to

22   proceed in the district court because AAA had declined to exercise jurisdiction due to Defendant's

23   refusal to comply with AAA's procedures. *See Eliasieh v. Legally Mine*, 3:19-cv-5977-JSC. The

---

[3] Defendant's suggestion that that AAA unilaterally terminated the arbitration proceeding without warning Defendant's arbitration counsel is contradicted by the record. (*See* Dkt. No. 76, John E. Lattin Dec'l at ¶¶ 3-4.) AAA had re-circulated its August 22, 2019 letter warning that it may terminate the arbitration proceeding to Defendant's arbitration counsel. (*See* No. 19-cv-5977, Dkt. No. 12 at139, Ex. O.) In addition, Defendant's arbitration counsel began communicating with AAA regarding the August 6, 2019 letter on August 15, 2019—thus, counsel was well aware of AAA's position and warning long before the September 10, 2019 termination of arbitration. (*See* Dkt. No. 70 at ¶¶ 12-15.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Court subsequently related the new case to the previously dismissed case and scheduled a status

2  conference.  (No. 19-cv-5977, Dkt. No. 5, No. 18-3622, Dkt. No. 68.)  At the November 21, 2019

3  status conference, the Court reopened the earlier-filed action and gave Defendant until December

4  12, 2019 to "resolve the issues with the arbitration proceeding." (Dkt. No. 69.)  The Court also set

5  a briefing schedule for Plaintiff to file a motion for relief with respect to the arbitration

6  proceedings and/or the Court's order compelling arbitration.  (*Id.*)  Plaintiff thereafter filed the

7  underlying motion to lift the stay and reinstate the case, for sanctions, and to amend the complaint.

8  (Dkt. No. 71.)[4]

9                                          **DISCUSSION**

10        **A.      Motion to Reinstate Plaintiff's Case in Federal District Court**

11        Plaintiff contends that the Court should exercise jurisdiction over the case for three

12  reasons: (1) Defendant's conduct breached its obligation to arbitrate with Plaintiff, and that breach

13  excuses Plaintiff from having to arbitrate; (2) Defendant's conduct constitutes a default in the

14  arbitration and Defendant has now lost its standing to avoid federal court litigation; and (3)

15  Defendant has waived its right to arbitration.  The Court need not consider the second two grounds

16  for reinstating this action because it finds that the first is dispositive.

17              **1.       Defendant Materially Breached the Arbitration Agreement**

18        Plaintiff contends that because Defendant has materially breached the Arbitration

19  Agreement, he is excused from having to arbitrate his claims.  It is well-settled that an arbitration

20  agreement can be avoided by "a defense that would be available to a party seeking to avoid the

21  enforcement of any contract."  *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005).

22  "'These contract-based challenges are governed by applicable state law,' which in this case is

23  California." *McLellan v. Fitbit, Inc.*, 2018 WL 3549042 * 4 (N.D. Cal. July 24, 2018) (quoting

24  *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir. 2008)).  It is a "bedrock principle

---

[4] Plaintiff seeks relief in the form of lifting the stay of proceedings and reinstating his case. Originally, however, the Court had dismissed the case without prejudice after granting Defendant's motion to compel arbitration. (*See* Dkt. No. 66.)  Following the November 21, 2019 status conference, the Court reopened this case and directed the parties as described above. (Dkt. No. 69.)  The newer-filed case is also proceeding before the Court.

1    of California contract law . . . that he who seeks to enforce a contract must show that he has

2    complied with the conditions and agreements of the contract on his part to be performed." *Brown*,

3    430 F.3d at 1010 (internal quotation marks and citations omitted).  Whether a party is in material

4    breach of a contractual obligation is ordinarily a question of fact. *Brown v. Grimes*, 192 Cal. App.

5    4th 265, 277 (2011).

6            Plaintiff has met his burden of showing as a matter of law that Defendant materially

7    breached the arbitration agreement.  AAA notified Defendant on August 6, 2019 that AAA's

8    Consumer Arbitration Rules apply, that Defendant must submit its arbitration clause for inclusion

9    on the Consumer Clause Registry, and that certain of Defendant's arbitration agreement provisions

10   violated AAA's Consumer Arbitration Rules and thus must be waived.  AAA included a form for

11   Defendant to sign acknowledging the waiver.  The same letter advised Defendant of the fees it was

12   required to pay by August 21, 2019.  Defendant did not pay the fees nor sign the waiver.  On

13   August 22—after the deadline to pay the fees had passed—AAA sent Defendant a second letter

14   requesting payment and extending the deadline to September 5, 2019 and asking again for the

15   signed waiver.  Defendant did nothing.  Then on September 10, 2019, after the extended deadline

16   to pay the fees and sign the waiver had lapsed, AAA terminated the arbitration proceedings and

17   closed the file.  Defendant's failure to pay the required fees leading to the termination of the

18   arbitration was a material breach of the arbitration agreement.  *See Sink v. Aden Enterprises, Inc.*,

19   352 F.3d 1197, 1201 (9th Cir. 2003) (stating that the defendant's "failure to pay required costs of

20   arbitration was a material breach of its obligations in connection with the arbitration."); *Brown*,

21   430 F.3d at 1006 (a party "must itself participate in properly initiated arbitration proceedings or

22   forego its right to compel arbitration."); *McLellan v. Fitbit, Inc.*, No. 16-00036, 2018 WL

23   3549042, at *1 (N.D. Cal. July 24, 2018) ("When a party to an arbitration agreement is sued, it

24   will lose the right to compel arbitration if it fails to pay the arbitrator's fees or otherwise

25   participate in the arbitration"); *see also Brunner v. Lyft, Inc.*, No. 19- 04808, 2019 WL 6001945, at

26   *2 (N.D. Cal. Nov. 14, 2019) (Defendant "did not materially breach the arbitration agreement"

27   because it ultimately paid the fees after the arbitrator reissued the fee invoice.)

28           Defendant's insistence that it is not in material breach because the AAA Commercial Rules

United States District Court
Northern District of California

5

should have applied is unpersuasive.  Defendant's arbitration agreement did not specify which rules to apply, but AAA itself—again the entity Defendant unilaterally chose to conduct its arbitrations—determined that the Consumer Arbitration Rules apply.  Nothing in the arbitration agreement—or the caselaw—gives Defendant the right to refuse to arbitrate merely because it disagreed with how its chosen arbitration agency decided to proceed.  To the contrary, the AAA Consumer Rules themselves have a process for objecting to their application:

> (e) The AAA has the initial authority to apply or not to apply the Consumer Arbitration Rules. If either the consumer or the business disagrees with the AAA's decision, the objecting party must submit the objection by the due date for filing an answer to the demand for arbitration. If an objection is filed, the arbitrator shall have the authority to make the final decision on which AAA rules will apply.

(Consumer Rule R-1 (e), No. 19-cv-5977, Dkt. No. 12 at 43, Ex. F.)  Defendant chose not to follow that process, leading to the termination of the arbitration proceedings and thus a material breach.

Defendant's reliance on *Crook v. Wyndham Vacation Ownership, Inc.*, No. 13-03669, 2015 WL 4452111, at *5 (N.D. Cal. July 20, 2015), is misplaced.  There, the court did not address whether a defendant breached an arbitration agreement because it disagreed with the rules of the organization it unilaterally chose to govern arbitration with its customers.  Further, the agreement there, unlike here, specifically stated arbitration was governed by the AAA Commercial Rules, *see Crook*, 2015 WL 4452111 at *1, and moreover, we do not know what AAA decided to do once the arbitration was commenced; AAA may have insisted that the Consumer Rules must govern regardless of what the defendant put in its unilaterally-written arbitration agreement.

Defendant's next argument—it is not in material breach of the arbitration agreement because Plaintiff incorrectly initiated arbitration under the AAA Consumer Rules—similarly fails.  As explained above, the arbitration agreement did not specify what Rules governed; thus, Plaintiff did not breach the arbitration agreement by noting his position that the Consumer Rules applied.  And, even assuming there is a good faith dispute as to what Rules should govern, Defendant was required to follow AAA's specified procedures to dispute the application of the Consumer Rules—procedures laid out by the organization that it itself chose to administer arbitration arising under its arbitration clause.

United States District Court
Northern District of California

1    Defendant's attempt to excuse its material breach by arguing that it has diligently

2  attempted to arbitrate under the Commercial Rules is also unavailing.  Defendant offers no

3  explanation as to why it is not obligated to follow AAA's rules and procedures.  The bottom line is

4  that AAA terminated the arbitration due to Defendant's conduct.  Under well-settled caselaw and

5  the AAA's own rules, the termination of the arbitration due to Defendant's non-payment of fees

6  means that Plaintiff can pursue his claims in court.  *See* Dkt. No. 12 at 134, Ex. L ("pursuant to the

7  R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration,

8  either party may choose to submit its dispute to the appropriate court for resolution").

9    Nor does Defendant's conduct following the Court's November 22, 2019 order ameliorate

10  its breach because even after this date, Defendant did not follow AAA's procedures.  On

11  December 26, 2019, Defendant's counsel submitted a status report detailing its unsuccessful

12  efforts to resume the arbitration.  (Dkt. No. 70.)  Defendant's arbitration counsel represented that

13  prior to the Court's November 22, 2019 order, he called AAA on August 15, 2019 to register

14  Defendant's concerns regarding application of the Consumer Rules, but he did not hear back from

15  AAA, and that "AAA applied the AAA Consumer Rules by default rather than carefully

16  considering the facts of the case."  (*Id.* at ¶¶ 12-15.)  After the November 22, 2019 order,

17  Defendant's counsel again called AAA to accept payment of fees and reopen the arbitration and

18  contacted Plaintiff's counsel for cooperation.  (*Id.* at ¶¶ 18-19.)  Defendant also wrote a letter to

19  AAA urging reopening of the arbitration, but AAA declined the request absent Plaintiff's "consent

20  to move forward as originally filed."  (*Id.* at ¶ 30.)  Defendant has ultimately been unable to

21  resolve the issues with the arbitration proceedings as a direct consequence of its effective refusal

22  to follow AAA's procedures when it had the opportunity to do so.

23    Finally, at various times Defendant has also argued that Plaintiff contravened the

24  arbitration agreement by filing for arbitration in California instead of Utah.  (No. 19-cv-5977, Dkt.

25  No. 6 at 2-3, Dkt. No. 6-1 at 2, Dkt. No. 11 at 5-6.)  However, AAA's July 11, 2019 online filing

26  confirmation of Plaintiff's demand for arbitration specifically notes that "[t]his is a claim filed

27  under the Consumer Arbitration Rules, Utah Jurisdiction."  (No. 19-cv-5977, Dkt. No. 12, Ex. J.)

28  Similarly, Plaintiff's actual demand for arbitration lists Utah as the venue on the very first page,

United States District Court
Northern District of California

1    and Plaintiff served the demand on Defendant via email.  (No. 19-cv-5977, Dkt. No. 12, Ex. I, Ex.

2    K.)  Defendant now seems to have abandoned this argument, for good reason.

3         In sum, Defendant failed to comply with the procedures for commencing arbitration, just

4    as the defendants in *Brown* and *McLellan*.  Defendant's argument that this case is distinguishable

5    because it did not outright refuse arbitration and has instead diligently "attempted to arbitrate

6    under the correct rules" is unpersuasive.  (Dkt. No. 76 at 12.)  The fact remains that Defendant

7    failed to follow AAA's procedures, which resulted in an effective refusal to engage in arbitration

8    and led AAA to terminate the arbitration proceedings.  In addition, unlike here, the defendant in

9    *McLellan* ultimately paid the requisite fees before the arbitration was terminated by the

10   administering organization.  *McLellan*, 2018 WL 3549042 at *5.  Nor is this case akin to the

11   "administrative confusion" at issue in *Brunner v. Lyft, Inc.*, 2019 WL6001945, at *2 (N.D. Cal.,

12   Nov. 14, 2019).  There, both the arbitrator and the defendant were in communication with each

13   other to sort through whether arbitration fees had been paid, and once it was clear that defendant

14   had not paid, it promptly did.  *Brunner*, 2019 WL6001945 at *1.  Here, in contrast, there was no

15   confusion as to what Defendant had to do—AAA had asked it to pay the fees and waive the two

16   conditions, and if it disagreed with AAA's decision of which rules applied, to raise those concerns

17   once arbitration was initiated.  Defendant did none of the above.

18        Accordingly, because Defendant's nonpayment of fees and noncompliance with AAA's

19   procedures resulted in termination of arbitration proceedings, Defendant is in material breach of

20   the arbitration agreement and cannot compel Plaintiff to arbitrate his claims.  *See Brown*, 430 F.3d

21   at 1012 (allowing a party to compel arbitration after a material breach "would encourage

22   companies to refuse to participate in properly initiated arbitration proceedings.")

23        **B.      Motion for Attorneys' Fees and Ancillary Relief**

24        Plaintiff also asks the Court to sanction Defendant's conduct by: (1) awarding reasonable

25   attorneys' fees; and (2) granting ancillary relief requiring Defendant to include this order

26   "rejecting arbitration on all those customers of Defendant who have complained about

27   Defendant's practices since September 10, 2019 and continuing for one year from the date" of the

28

8

1    order.  (Dkt. No. 71 at 10.)[5]

2         "The district court has the inherent authority to impose sanctions for bad faith, which

3    includes a broad range of willful improper conduct."  *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir.

4    2001).  Pursuant to those inherent powers, courts may "assess attorney's fees when a party has

5    acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Chambers v. NASCO, Inc.*,

6    501 U.S. 32, 45-46 (1991) (internal quotation marks and citations omitted).  A defendant's

7    conduct does not need to violate the law to be sanctionable.  *See In re Itel Sec. Litig.*, 791 F.2d

8    672, 675 (9th Cir. 1986).  Whether to impose inherent power sanctions is "a determination that

9    rests in the sound discretion of the district court."  *Fink*, 239 F.3d at 994.  However, "[b]ecause of

10   their very potency, inherent powers must be exercised with restraint and discretion."  *Chambers*,

11   501 U.S. at 44 (internal citation omitted).  As the record has shown, Defendant delayed and

12   impeded the arbitration by failing to pay AAA's fees and refusing to follow AAA's specific

13   directions and procedures for registering its objections, which ultimately led AAA to terminate the

14   arbitration proceeding.  Defendant was on notice and had received repeated warnings from AAA

15   as to what it had to do, but failed to do so.

16        Plaintiff appears, however, to seek nearly all of his attorneys' fees and costs as a sanction.

17   For example, he seeks almost $16,000 for fees incurred in opposing Defendant's *successful*

18   motion to compel arbitration.  There is no basis in law or fact for this request.  He also seeks

19   nearly $30,000 in fees in trying to obtain arbitration.  As he has not provided the Court with any

20   specificity, the Court cannot determine what fees, if any, were caused by sanctionable conduct.

21   Plaintiff's apparent belief that he gets all his fees is wrong, unsupported, and unsupportable.  For

22   this reason alone, his request for sanctions is denied.

23   _____

24   [5] In response to Defendant's counsel's declaration at Dkt No. 79, Hillery Dec'l, Plaintiff has now
     changed his ancillary relief request to "requiring Defendant and its attorneys to provide a copy of

25   the forthcoming court order rejecting arbitration on all those customers of Defendant who are
     purportedly bound by the now discredited arbitration agreement and continuing to the date (if any)

26   upon which the AAA not just accepts Legally Mine's new language but Legally Mine
     Incorporates that language into its contracts."  Dkt. No. 80 at 1-2.  Plaintiff also objects to the

27   Hillery Dec'l. on the grounds that the declarant is not the appropriate person with the knowledge
     to represent the material facts contained in the declaration.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court also questions whether it has the authority to sanction Defendant for its conduct

2  in connection with the arbitration.  That conduct occurred after the Court dismissed the case.

3  Plaintiff offers no support for his implicit assumption that this Court has the inherent authority to

4  award sanctions for conduct that occurred after the case was dismissed.  None of the cases he cites

5  supports that proposition.  While *Chambers* holds that a party may be sanctioned for abuses of

6  process occurring beyond the courtroom, it explains that such conduct must be tethered to the

7  action before the court, such as disobeying the court's orders.  *Id.* at 57 ("Chambers' attempt to

8  gain the FCC's permission to build a new transmission tower was in direct contravention of the

9  District Court's orders to maintain the status quo pending the outcome of the litigation and was

10  therefore within the scope of the District Court's sanctioning power.").  Plaintiff makes no attempt

11  to tether its request for sanctions to a violation of this Court's orders.  Plaintiff's suggestion that

12  this Court already ordered Defendant to pay fees is at best a misunderstanding of the Court's

13  comments at the November 21, 2019 status conference, as the Order following the conference

14  demonstrates.  (Dkt. No. 69.)

15    As to Defendant's request for ancillary relief, in light of Defendant's recent corrective

16  conduct, the Court finds that it is not appropriate at this stage.  As of January 28, 2020, Defendant

17  has now registered its consumer arbitration clause with AAA and it no longer contains the two

18  problematic provisions that AAA had requested Defendant to waive.  (Dkt. No. 79, Ex. A-B.)

19  Presumably, the reasons behind AAA's warning that it may decline to arbitrate proceedings

20  involving Defendant along with its request for Defendant to remove its name from the arbitration

21  clause have been rectified.  Additionally, Plaintiff has not provided the Court with any indication

22  that it is using similar tactics with other potential litigants to avoid arbitration of claims.  Given

23  Defendant's registry of the consumer clause, the Court in its discretion declines to impose the

24  ancillary relief sought.

25    **C.  Plaintiff's Motion to Amend Complaint**

26    Federal Rule of Civil Procedure 15(a)(2) states that a party may amend a pleading before

27  trial "with the opposing party's written consent or the court's leave" and that the "court should

28  freely give leave when justice so requires."  Though Rule 15(a) is "very liberal . . . a district court

10

United States District Court
Northern District of California

1   need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is

2   sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen*

3   *Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  Undue delay cannot alone justify

4   the denial of a motion to amend.  *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708,

5   712-13 (9th Cir. 2001).  The most important factor is prejudice to the opposing party.  *Zenith*

6   *Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31 (1971).  A "determination should

7   be performed with all inferences in favor of granting the motion."  *Griggs v. Pace Am. Group,*

8   *Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

9       Here, Plaintiff seeks leave to amend the complaint to add facts pertaining to AAA's refusal

10   to administer arbitration proceedings under Defendant's arbitration clause, Defendant's

11   noncompliance with AAA's request to remove the organization's name from its arbitration

12   agreement rendering the arbitration clause unenforceable on potential litigants, and extending the

13   scope of the putative class nationwide.  (Dkt. No. 71 at 16.)

14       Leave to amend is proper.  First, Defendant has not shown, nor is there any indication that

15   amending the complaint would prejudice Defendant.  *See Owens*, 244 F.3d at 712 (finding

16   appellants suffered no prejudice when appellee amended its answer because there was no delay in

17   proceedings or required additional discovery.)  The matter is in a relatively early stage and no

18   discovery deadlines have been set.  Plaintiff also sought leave to file the amended complaint under

19   the deadline set by the Court's order on November 22, 2019 after the status conference.  (*See* No.

20   19-cv-5977, Dkt. No. 16.)

21       Second, there is no evidence of bad faith.  *See Owens*, 244 F.3d at 712 (finding no

22   evidence of bad faith because Appellee offered "substantial competent evidence" as to why it

23   delayed in filing a motion to amend).  Plaintiff seeks to amend the complaint to add facts

24   chronicling his experience of initiating arbitration proceedings against Defendant, and

25   ramifications for putative class members.

26       Third, there is no evidence of undue delay.  Plaintiff sought leave to file the amended

27   complaint under the deadline set by the Court's order on November 22, 2019 following the status

28   conference.  (*See* No. 19-cv-5977, Dkt. No. 16.)

United States District Court
Northern District of California

1    Finally, "a proposed amendment is futile only if no set of facts can be proved under the

2    amendment to the pleadings that would constitute a valid and sufficient claim or defense."

3    *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997) (internal quotations omitted).

4    Defendant has not met its burden of showing futility.

5    Accordingly, the balance of factors supports granting Plaintiff leave to amend under

6    Federal Rule of Civil Procedure 15(a)(2).

7                                    **CONCLUSION**

8    For the reasons stated above, the Court GRANTS Plaintiff's motion to reinstate the case

9    and for leave to amend the complaint and DENIES Plaintiff's request for sanctions and ancillary

10   relief.  Plaintiff shall file his amended complaint within 7 days.  On **May 14, 2020 at 1:30 p.m**.

11   the Court will hold an initial case management conference and set a schedule through trial.  The

12   parties shall submit a Joint Case Management Statement one week in advance of the conference.

13   The Court intends to conduct the conference by video and the parties will be contacted by the

14   Courtroom Deputy with regard to arrangements for the session.

15   This Order resolves Docket No. 71.

16   **IT IS SO ORDERED.**

17   Dated: April 21, 2020

18

19

20   JACQUELINE SCOTT CORLEY
     United States Magistrate Judge

21

22

23

24

25

26

27

28